RECORD NO. 15-1999

*In The*

# United States Court of Appeals

### For The Fourth Circuit

# BRANDON PEGG,

*Plaintiff – Appellee*,

## v.

# GRANT HERRNBERGER, individually and in his capacity as agent and employee of the West Virginia State Police,

*Defendant – Appellant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT WHEELING

---

### REPLY BRIEF OF APPELLANT

---

**Deva A. Solomon**
**Monté L. Williams**
**Robert L. Bailey** (*on brief*)
**STEPTOE & JOHNSON PLLC**
**1085 Van Voorhis Road**
**Post Office Box 1616**
**Morgantown, West Virginia  26507**
**(304) 598-8000**

*Counsel for Appellant*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA  23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

I.     INTRODUCTION ........................................................................1

II.    ARGUMENT..............................................................................2

       A.    What subjectively motivated Trooper Herrnberger to search and arrest Brandon Pegg is irrelevant to the analysis of Trooper Herrnberger's motion for summary judgment on Pegg's claims..........2

       B.    *Atwater* and *Terry* apply to two mutually exclusive scenarios, and regardless of which scenario this case presented, Trooper Herrnberger complied with the governing case ...................................6

            1.    The totality of the circumstances satisfied *Terry*.......................7

                 (a)    Pegg's argument that the Troopers did not expressly command him to pull over changes nothing ...........................................................................8

                 (b)    Pegg's argument about the forty-five seconds that elapsed after the troopers pulled up behind him in their marked State Police cruiser and activated their flashing blue emergency lights changes nothing ...........................................................................9

                 (c)    Pegg's arguments that the circumstances justifying his pat down had possible alternative innocent explanations or were independently legal change nothing .........................................................................10

            2.    Pegg was lawfully arrested for his conceded violation of the law and was, therefore, lawfully searchable, and that is all that matters ....................................................................12

i

C.    That Pegg admits that Trooper Herrnberger saw Pegg break the law alone justifies Trooper Herrnberger's arrest and search of Pegg and precludes as a matter of law any Fourth or First Amendment claims based thereon.......................................................13

III.    CONCLUSION..............................................................................................18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Atwater v. City of Lago Vista*,
    532 U.S. 318 (2001) ................................................................. *passim*

*Graham v. Connor*,
    490 U.S. 386 (1989) ............................................................................5

*Johnson v. City of Fayetteville*,
    91 F. Supp. 3d 775 (E.D.N.C. 2015) ...............................................14

*Maryland v. Wilson*,
    519 U.S. 408 (1997) ............................................................................2

*Pennsylvania v. Mimms*,
    434 U.S. 106 (1977) ................................................................... 2, 6, 7

*Pritchett v. Alford*,
    973 F.2d 307 (4th Cir. 1992) ...........................................................16

*Reichle v. Howards*,
    132 S. Ct. 2088 (2012) ....................................................... 15, 16, 17

*Terry v. Ohio*,
    392 U.S. 1 (1968) ..................................................................... *passim*

*United States v. Robinson*,
    414 U.S. 218 (1973) .........................................................................6, 7

*United States v. Stanfield*,
    109 F.3d 976 (4th Cir. 1997) .............................................................2

*Whren v. United States*,
    517 U.S. 806 (1996) .......................................................... 4, 17, 18

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend I ...............................................................13, 16, 17, 18

U.S. Const. amend IV .......................................................................*passim*

**STATUTE**

W. Va. Code § 17C-16-9...............................................................*passim*

## I.     INTRODUCTION

In his response, Mr. Pegg makes three pervasive, related errors that invalidate all of his arguments. First, most of Pegg's response is based on the same error that the district court made: *i.e.*, the mistaken belief that Trooper Herrnberger's subjective motivation for searching and arresting Pegg—what Pegg calls what he was arrested "for" or "because of"—legally matters.

Second, contrary to Pegg's straw man, Trooper Herrnberger does not argue that *Atwater*[1] "supersedes" *Terry*.[2] Rather, *Terry* and *Atwater* apply to two mutually exclusive scenarios, and regardless of which scenario this case presented, Trooper Herrnberger complied with the governing law.

Third, Pegg's and the district court's inexplicable yet exclusive focus on why Trooper Herrnberger charged Pegg with obstruction and assault entirely ignores the *undisputed fact* that an objectively reasonable officer could have had probable cause to arrest Pegg—and Trooper Herrnberger did arrest Pegg—for illegally operating a motor vehicle without a valid inspection sticker, and this undisputed existence of probable cause to arrest Pegg for that violation independently justified Trooper Herrnberger arrest and search of Pegg.

---

[1]     *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001).

[2]     *Terry v. Ohio*, 392 U.S. 1 (1968).

## II.    ARGUMENT

### A.    What subjectively motivated Trooper Herrnberger to search and arrest Brandon Pegg is irrelevant to the analysis of Trooper Herrnberger's motion for summary judgment on Pegg's claims.

Pegg predicates nearly his entire argument that disputes of material fact exist on examples of what he claims were Trooper Herrnberger's subjective motivations for pulling Pegg over, ordering him from his truck,[3] searching him, and arresting him. Examples of this are ubiquitous in Pegg's brief. (*See, e.g.*, Resp. at 3–4 n.2 (arguing that Trooper Herrnberger's omission from his report on the incident of the initial roadside encounter where the troopers told Pegg that he was breaking the law proves that it was not part of Trooper Herrnberger's subjective motivation), 6 (same for the time that it took the troopers to catch back up to Pegg once he did not stop when they told him that he was breaking the law), and 7 (same for the forty-five second delay between when the troopers activated their marked cruiser's blue lights and when Pegg finally pulled over); *id.* at 13–16 (arguing that evidence that Trooper Herrnberger exhibited conduct arguably suggesting that *he* did not subjectively believe that Pegg was dangerous somehow precludes summary judgment); *id.* at 20 (asserting that the fact that Trooper

---

[3]    The legality of Trooper Herrnberger ordering Pegg from his vehicle is not disputed. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977); *accord Maryland v. Wilson*, 519 U.S. 408, 410 (1997); *United States v. Stanfield*, 109 F.3d 976, 980 (4th Cir. 1997).

Herrnberger seems to be ignoring what appears to be an armed hunter emerging from the woods during the stop somehow precludes summary judgment, apparently on the theory that Trooper Herrnberger was not subjectively afraid of guns).)

Pegg argues that a jury might believe his expert and "reasonably dismiss *Appellant Herrnberger's explanations as to his conduct*" and "disregard all of the *explanations provided by Appellant for his conduct* . . . ."[4]  And Pegg points to testimony where, he says, Trooper Herrnberger "was incapable of articulating a definition" of the legal term "reasonable suspicion."[5]

As Trooper Herrnberger detailed in his Brief, however, ***none of this matters***.  The sole relevant question is whether an objectively reasonable officer faced with the totality of the circumstances that faced Trooper Herrnberger could have had probable cause to arrest Pegg for violating any law, no matter how minor. Evidence about *why* Trooper Herrnberger supposedly stopped, searched, and arrested Pegg, whether Trooper Herrnberger *acted like an officer who believes* he is in danger should have acted, or whether Trooper Herrnberger could compose a good legal argument during his deposition is thus incapable of making more or less probable any fact that is of consequence in the determination of this matter.

---

[4]     (Resp. Br. of Appellee ("Resp.") at 35 (emphasis added);  *see id.* at 38–39.)

[5]     (*Id.* at 14–15.)

3

The most offensive instance, for example, of the evidence that Pegg argues—and that the district court found—precluded summary judgment was the court's accepting that there is a dispute about what Trooper Herrnberger meant when he "is heard excitedly whispering, 'Run! Run!'"[6] The district court adopted Pegg's theory that Troopers Herrnberger and Beck were "raring for excitement"[7] hoping that Pegg would flee just so they could beat him up.[8]

Although difficult to do, momentarily putting aside the indecency of this theory (and how clear it is that the troopers were "hoping" Pegg would flee because that would have told them that they had caught up with someone who was up to something serious), to whatever extent this issue presents a *factual* dispute, it certainly does not present a *material* factual dispute, so it does not give rise to a *jury question* sufficient to defeat summary judgment:  "[O]nly an undiscerning reader would regard [the Supreme Court's] cases as endorsing the principle that ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause to believe that a violation of law has occurred,"[9] thus even "[a]n

---

[6]     (*Id.* at 5 (emphasis omitted).)

[7]     (*Id.* at 8.)

[8]     (*Id.* at 25 (citing JA at 380 (noting that the district court denied summary judgment because it felt this evidence "spoke strongly to Appellant's predisposition to using force against Mr. Pegg," evidence that could scarcely be less relevant).)

[9]     *Whren v. United States*, 517 U.S. 806, 811 (1996).

officer's evil intentions will not make a Fourth Amendment violation out of [objectively reasonable conduct] . . . ."[10]

Pegg tries to disguise in a cloak of objectivity his inability to resist offering evidence showing Trooper Herrnberger's supposed subjective motivations by saying that Trooper Herrnberger "engaged in no conduct that would have objectively established that he harbored any concerns for his safety or Beck's."[11] That is not the standard, and this assertion does nothing to mask the fact that it is the subjective intentions that Trooper Herrnberger "harbored" that Pegg argued and the district court expressly, erroneously found, precluded summary judgment.

When Pegg and the district court challenge what Trooper Herrnberger arrested Pegg "for," they indulge in legal shadowboxing: If by "for" they mean to inquire into Trooper Herrnberger's supposed subjective motivations, then that analysis lacks legal merit. And if by "for" they mean to ask what charges Trooper Herrnberger wrote on the criminal complaint, as discussed both here (*infra*) and in Trooper Herrnberger's Brief, that inquiry, too, is irrelevant to the proper analysis of whether Pegg's claims have any legal merit.

---

[10]    *Graham v. Connor*, 490 U.S. 386, 397 (1989).

[11]    (Resp. at 26.)

**B.** ***Atwater*** **and** ***Terry*** **apply to two mutually exclusive scenarios, and regardless of which scenario this case presented, Trooper Herrnberger complied with the governing case.**

One of Pegg's many straw men is his assertion that Trooper Herrnberger "hinges his entire argument that he was justified in seeking to search Mr. Pegg based upon so-called officer safety concerns."[12]  That is patently false. As Trooper Herrnberger clearly demonstrated in his Appellant's Brief, the fact that officer safety objectively justified under *Terry* his effort to pat Pegg down is in the alternative to the fact that Pegg concedes that he was breaking the law, so an objectively reasonable officer could have had probable cause to arrest him and, incident to that arrest, search him—regardless of what did or did not subjectively motivate Trooper Herrnberger to pull over, search, and arrest Pegg "for."[13]

A second, related straw man is Pegg's assertion that Trooper Herrnberger "suggest[s] that *Atwater* somehow supersedes the rules created by both *Mimms* and *Terry* . . . ."[14]  That, too, is false.  As Trooper Herrnberger made clear,[15] *Terry* and *Atwater* apply to two different, mutually exclusive scenarios. *Terry* allows that if the totality of the circumstances could *not* have given an

---

[12]     (*Id.*)

[13]     *United States v. Robinson*, 414 U.S. 218, 224 (1973).

[14]     (Resp. at 37–38.)

[15]     (*See also infra.*)

objectively reasonable officer probable cause to *arrest* a suspect, but those circumstances (including otherwise lawful conduct, and including suspicious conduct for which there perhaps might also be some innocent explanation) *could* have given an objectively reasonable officer a reasonable suspicion that that suspect was armed and dangerous, then an officer who conducts a brief pat-down search of such a person does not violate the Fourth Amendment.

*Atwater*, on the other hand, says that if the circumstances *could* have given an objectively reasonable officer probable cause to arrest a suspect for any offense, no matter how minor, then an officer who arrests that person does not violate the Fourth Amendment. Other cases (*Robinson* and its progeny, for example) separately provide that if an officer constitutionally arrests a person, then he may search that person incident to that arrest without violating the Fourth Amendment, regardless of his motivation for doing so. *That* is why "*Atwater* does not even mention, implicitly or explicitly, either *Mimms* or *Terry*."[16]

### 1.    The totality of the circumstances satisfied *Terry*.

Even entirely disregarding the question of whether there is evidence from which an objectively reasonable officer could have concluded that Pegg's hands were between his legs and that he might have been trying to access a weapon, the *totality* of the remaining, undisputed circumstances could still have led

---

[16]    (Resp. at 38.)

an objectively reasonable officer to believe that Pegg was armed and dangerous. Trooper Herrnberger catalogued the *many* other circumstances supporting this.[17]

In his Response, Pegg offers many excuses to justify his actions on the day in question.  As a matter of law, however, none of his excuses provides any reason to deny Trooper Herrnberger's motion.

### (a)    Pegg's argument that the Troopers did not expressly command him to pull over changes nothing.

Pegg protests at length that Trooper Herrnberger "repeatedly misstates the testimony"[18] about whether one of the troopers told Pegg in as many words to pull over as he initially drove slowly by them with his window down.  Pegg's protestations are irrelevant.  Pegg apparently believes that when the police shout to you through your open window as you slowly drive by them that you are breaking the law, that statement does not also implicitly mean to pull over.  He also recalls that he testified he never heard the troopers shout to him that he was breaking the law, but that he only heard them "calling out something to him as he drove past them, possibly concerning his inspection sticker."[19]

---

[17]    (*See* Br. of Appellant at 27–34 (cataloguing totality of circumstances that could have led an objectively reasonable officer to conclude that Pegg was armed and dangerous, which Pegg dismissively derides as "preposterous" (Resp. at 37)).)

[18]    (Resp. at 3 n.1 (emphasis omitted).)

[19]    (*Id.* at 3.)

Pegg was not arrested for evading. Rather, he was searched *in part* because an objectively reasonable officer could have believed (1) that Pegg heard the troopers tell him that he was breaking the law and (2) thus that Pegg's not stopping was suspicious, contributing to the totality of the many other circumstances justifying a belief that Pegg was subject to a *Terry* pat down.

> **(b)    Pegg's argument about the forty-five seconds that elapsed after the troopers pulled up behind him in their marked State Police cruiser and activated their flashing blue emergency lights changes nothing.**

Pegg asks the Court to ignore the length of time that *he admits*[20] it took him to pull over after the troopers pulled up behind him in their marked State Police cruiser and activated their flashing blue emergency lights—*i.e.*, forty-five seconds—by calling it "a whole forty-five (45) seconds"[21] and "a whopping forty-five (45) seconds,"[22] and by falsely mocking Trooper Herrnberger as calling the delay "something approaching an eternity."[23] This does not create a dispute of *material fact*, because no reasonable jury could conclude that that delay did not

---

[20]    (*Id.* at 25 (conceding that "it is true that Mr. Pegg did not stop for forty-five seconds").)

[21]    (*Id.* at 6.)

[22]    (*Id.* at 8.)

[23]    (*Id.* at 7.)

contribute to the totality of the circumstances justifying an objectively reasonable officer's decision to pat Pegg down once he finally pulled over.[24]

> **(c)    Pegg's arguments that the circumstances justifying his pat down had possible alternative innocent explanations or were independently legal change nothing.**

Pegg argues that some of the circumstances justifying his pat down perhaps have alternative, innocent explanations.    (*See*, *e.g.*, Resp. at 7–8 (discussing the possibility that perhaps Pegg was not stopping after the troopers pulled behind them and activated their marked cruiser's flashing blue lights because they had not also activated their siren and he had not seen them); *id.* at 8 (attempting to minimize the significance of the fact that Pegg failed to pull over notwithstanding having four or five clear opportunities to have done so (by citing testimony that remains subject to an unresolved objection)).)

As demonstrated in Trooper Herrnberger's brief, however, none of these arguments matter, because the law does not require police officers to *post hoc* justify everything that a suspect does by searching for every innocent explanation notwithstanding the existence of culpable explanations.

---

[24]    Any lingering dispute about whether a reasonable jury could find that such a delay is, as Pegg would have the Court believe, inconsequential can easily be dispelled by putting one's self in the position of a police officer who has just pulled up behind someone and turned on his marked state police cruiser's flashing blue lights, and then watching forty-five seconds pass by on a clock.

Pegg similarly argues that perhaps some of the circumstances justifying his pat down were independently legal (*see*, *e.g.*, *id.* at 6 and n.6 (life-size assault rifle sticker in window with "Come and Take It" message); *id.* at 10–11 (Pegg's interjecting his disapproval of Trooper Herrnberger asking Mr. Beever for his identification)), or even worthy of a gold star (*see*, *e.g.*, *id.* at 9, 25 (noting that he pulled over when he says he saw the police trying to get him to pull over, that he put his truck in park when he parked (supposedly proving that he no longer harbored any thoughts of fleeing), and that he handed his information to the troopers when they told him to hand his information to them); *id.* at 16 (boasting of having "compliantly and peaceably" exited the vehicle when directed to do so), 17 (and having "dutifully walked to the area indicated" when ordered to do so).)

But these allegations are also irrelevant. As also detailed in Trooper Herrnberger's brief, *of course* they were legal. That is the very point of *Terry*'s analysis. Under *Terry*, courts ask whether suspicious *lawful* conduct formed a totality of circumstances justifying an objectively reasonable belief that a person committed a crime, or is armed and dangerous. Where (also as here; *see infra*) a person does something *unlawful*, then there is no need for *Terry*'s totality analysis to justify a search or seizure: the officer could then simply arrest the person for that illegal act, regardless of how minor, and search him. The fact that the many

circumstances contributing to the totality of circumstances justifying Pegg's pat down were themselves lawful is thus meaningless.

> **2.    Pegg was lawfully arrested for his conceded violation of the law and was, therefore, lawfully searchable, and that is all that matters.**

Even if the totality of the circumstances—even without the evidence that Trooper Herrnberger saw Pegg reach into his lap for something—did not add up to overwhelming justification under *Terry* for an objectively reasonable officer to have patted Pegg down, the result would still be the same, because it is *undisputed* that an objectively reasonable officer could have had probable cause to believe that Pegg committed a crime.  He was, under *Atwater*, therefore constitutionally subject to arrest and, consequently, search.

Pegg chastises Trooper Herrnberger for repeatedly stating the fact "that he enjoyed the right [*sic*] to 'undeniably lawfully arrest' Mr. Pegg for a violation of W. Va. Code § 17C-16-9 . . . ."[25]  Trooper Herrnberger "would do well," Pegg reprimands, "to check the West Virginia Code to confirm that W. Va. Code § 17C-16-9 does not constitute a ***jailable*** offense."[26]  Pegg would do well to reread *Atwater* and not confuse arrestable—the only thing the Constitution cares about—with jailable—the only thing Pegg seems to care about.  Gail Atwater also

---

[25]    (*Id.* at 30.)

[26]    (*Id.* (emphasis added).)

12

argued that the Supreme Court should draw a constitutionally significant line between jailable and arrestable-but-fine-only offense, but the Court rejected that very distinction.[27]  Brandon Pegg was undisputedly *arrestable* for violating W. VA. CODE § 17C-16-9, and that is the end of the constitutional analysis.

> **C.**  **That Pegg admits that Trooper Herrnberger saw Pegg break the law alone justifies Trooper Herrnberger's arrest and search of Pegg and precludes as a matter of law any Fourth or First Amendment claims based thereon.**

The most critical and pervasive mistake that the district court (and Pegg) make is in focusing on Trooper Herrnberger charging Pegg with obstruction (for which the magistrate judge found probable cause) and assault (for which the magistrate judge did not), to the exclusion of Pegg's concededly lawful arrest for violating W. VA. CODE § 17C-16-9:[28]  Because an objectively reasonable officer could not have had probable cause to believe Pegg obstructed or assaulted Trooper Herrnberger, the theory goes, then a jury could find that Trooper Herrnberger must have arrested Pegg "for" engaging in protected speech.

As demonstrated, however, this erroneous focus on things that Trooper Herrnberger supposedly could *not* arrest Pegg for is a very bright red herring.  As thoroughly detailed here and in Trooper Herrnberger's Brief, the undisputed fact that Trooper Herrnberger saw Pegg violate W. VA. CODE

---

[27]      *See* 532 U.S. at 345–55.

[28]      (*See*, *e.g.*, Resp. at 17–20, 40.)

§ 17C-16-9 independently justified his arrest and search of Pegg—regardless of Trooper Herrnberger's supposed motivations for doing so, regardless of whether Pegg was "jailable," regardless of what other charges Trooper Herrnberger put on the criminal complaint, and regardless of even whether Trooper Herrnberger put the W. VA. CODE § 17C-16-9 violation on the criminal complaint (he did[29]).

As for Pegg's arrest, this is true because the law is clear:  If an objectively reasonable officer could have had probable cause to arrest a person for any offense, no matter how minor, then a particular defendant officer's arresting that person is not an unreasonable seizure under the Fourth Amendment—regardless of the defendant officer's supposed motivation, regardless of whether he did or did not put the offense(s) for which probable cause exists in the criminal complaint, and regardless of whether there was probable cause to arrest the person for the offense(s) that he did put in the criminal complaint.[30]

As for Pegg's search, both the totality of the undisputed circumstances *and* his lawful arrest for violating W. VA. CODE § 17C-16-9 each justified patting him down—regardless of Trooper Herrnberger's supposed motivation.

---

[29]     (JA at 311.)

[30]     (*See* Br. of Appellant at 24–25 (quoting the learned Judge Fox's excellent summary of the law on this very point in *Johnson v. City of Fayetteville*, 91 F. Supp. 3d 775, 800–01 (E.D.N.C. 2015).)

As for Pegg's excessive force claim, because Pegg was lawfully subject to the pat down that Trooper Herrnberger attempted to perform, Pegg was not free to resist, as he incorrectly believes; he plainly did resist;[31] and the minimal force that Trooper Herrnberger used to compel Pegg's cooperation was obviously not excessive under the circumstances.[32]

Finally, as for Pegg's retaliatory arrest claim, this is true because there is no clearly established right to be arrested by an officer whose subjective intent is free of retaliatory motivation absent the allegation that an objectively reasonable officer could not have had probable cause to arrest the person.[33] Pegg argues at length the abstract principle that by criticizing Trooper Herrnberger's investigation, he was engaging in protected speech.[34] Perhaps. As discussed in

---

[31]    (*See* JA at 20, Video.) Pegg tries to get out of his admission that he resisted Trooper Herrnberger's search—"Admit that you resisted [Appellant's] attempt to secure your hands behind your back. Admitted"—by saying that he qualified his admission with the statement that he had a right to do so. (Resp. at 17 n.11.) As demonstrated, Pegg is wrong: he did not have the right to resist being patted down. In any event, Pegg's admission says what it says, and it remains undisputed that Pegg resisted Trooper Herrnberger's effort to pat him down and that the magistrate judge found probable cause to charge Pegg with obstructing.

[32]    (*See* JA at 20, Video.) Consistent with his ubiquitous exaggeration of the evidence, Pegg characterizes his seconds-long scuffle as, "Mr. Pegg was driven face first into the asphalt." (Resp. at 18–19.) Nothing in Pegg's deposition—indeed, no evidence—supports this melodramatic allegation, and the Video speaks for itself.

[33]    *See Reichle v. Howards*, 132 S. Ct. 2088 (2012).

[34]    (Resp. at 29–32.)

Trooper Herrnberger's Brief, however, it is undisputed that Trooper Herrnberger had probable cause to arrest Pegg for violating W. Va. Code § 17C-16-9. To allow the district court's (and Pegg's) theory—that a plaintiff can simply allege "retaliation" and so easily end run around the Supreme Court's consistent refusal to allow an arrest-based claim in the presence of probable cause—would eviscerate decades of unambiguous jurisprudence, and squarely contradict *Reichle*, a case that Pegg inexplicably does not even *cite* in his response.[35]

---

[35]    Pegg's argument that he "had a 'clearly established' right to be free from an unlawful arrest" (Resp. at 28) is irrelevant for two reasons. First, like his assertion that "[t]he constitutional right embodied in U.S. CONST. AMD. 1 is more than 'clearly established'" (*id.* at 30), it is so vague as to border on tautology. Of course Pegg had a clearly established right to be free from an unlawful arrest. But that is far too vague a statement of his right to be constitutionally significant in the qualified immunity analysis. The only relevant question is, did Pegg have a clearly established right to be free from *this* arrest. *See Pritchett v. Alford*, 973 F.2d 307, 312–13 (4th Cir. 1992) ("In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to *the specific conduct being challenged*. And the determination whether a reasonable person in the officer's position would have known that his conduct would violate the right at issue must be made on the basis of information *actually possessed by the officer at the critical time, or that was then reasonably available to him*, and *in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions*. The tolerance thus accorded by the qualified immunity defense to 'good faith' mistakes of judgment traceable to unsettled law, or faulty information, or contextual exigencies, is deliberately designed to give protection to 'all but the plainly incompetent or those who knowingly violate the law,' in order to avoid undue inhibitions in the performance of official duties. Because qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged.") (emphasis added) (citations omitted). Second, it is

16

Unlike Pegg, the district court did quote from *Reichle*,[36] noting that a "[p]laintiff claiming a retaliatory First Amendment violation must simply plead, '***an absence of probable cause***,' in effectuating the underlying arrest."[37]   The district court then observed that Trooper Herrnberger "contents that '[Pegg] does not allege that [Trooper Herrnberger] lacked probable cause to arrest [him],'" but that Pegg "VERY CLEARLY does so in the complaint" (citing Pegg's allegation that Trooper Herrnberger lacked probable cause to arrest him for *assault*).   As already demonstrated here and in Trooper Herrnberger's Brief, in order to make out a First (or Fourth) Amendment claim, the requirement that a plaintiff allege "lack of probable cause" means a lack of probable cause for any offense;  it does not mean that he can allege lack of probable cause for one offense while conceding the existence of probable cause for another.   The presence of probable cause to arrest someone for an offense is not a "lack of probable cause."[38]

---

irrelevant because as Pegg concedes, Trooper Herrnberger had probable cause to arrest Pegg for violating W. VA. CODE § 17C-16-9.

[36]     (Resp. at 34 (citing JA at 377.)

[37]     (JA at 377 (emphasis added).)

[38]     Pegg also makes the throwaway argument that the observation in *Atwater* that "searches or seizures conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests," *Atwater*, 532 U.S. at 352–53 (quoting *Whren*, 517 U.S. at 818), "certainly affords an avenue whereby Mr. Pegg may seek to test his claims utilizing special jury interrogatories."  (Resp. at 38.)  Pegg then offers absolutely nothing to support this "certain" assertion.  There is good reason:  even a cursory read of the kind of conduct that the *Whren* Court had in mind demonstrates that Pegg's assertion lacks any merit.  *See Whren*, 517 U.S.

## III.   CONCLUSION

Pegg points to some *facts* over which the parties disagree, perhaps even enough that it can be said that Pegg has placed some of them reasonably in dispute.  But Pegg has not identified any *material* facts that the parties reasonably dispute—facts that make more or less probable any of his claims.   And once Pegg's brief is purged of arguments based on irrelevant evidence, little remains.

The reason is clear:  Pegg admits that on August 4, 2013, Trooper Herrnberger saw him break the law.  Pegg thus nowhere disputes the fact that an objectively reasonable officer could have had probable cause to pull Pegg over for that violation, order him from his vehicle, arrest him, and search him incident to that arrest, all without violating the Fourth or First Amendments.  Instead, Pegg asks—and the district court's order requires—the Court to ignore what Pegg admits he *did* do and erroneously focus on some things that he says he did *not* do.  Finally, as demonstrated, even if Pegg had not been constitutionally arrestable (and arrested) because he broke the law, the totality of the undisputed circumstances (*i.e.*, even disregarding the issue of where Pegg's hands were when he was in his vehicle) could still have easily led an objectively reasonable officer to conclude

at 818 (giving as examples of such "extraordinary" cases, "seizure by means of deadly force, entry into a home without a warrant, or physical penetration of the body" and rejecting the argument that "[t]he making of a traffic stop out of uniform [could even] remotely qualify as such an extreme practice") (citations omitted).

that Pegg should be patted down.  Trooper Herrnberger's measured application of force in response to Pegg's admitted resistance was perfectly reasonable.

Accordingly, Trooper Herrnberger respectfully requests that the Court **GRANT** his appeal and **ORDER** that the Order of the District Court for the Southern District of West Virginia denying Trooper Herrnberger's motion for summary judgment be **REVERSED** with instructions to enter summary judgment in Trooper Herrnberger's favor.

**APPELLANT,**

**By Counsel**

/s/ Deva A. Solomon

**STEPTOE & JOHNSON PLLC**
*Of Counsel*

Monté L. Williams (WV Bar #9526)
Deva A. Solomon (WV Bar #10843)
Robert Bailey (*on brief*) (WV Bar #8902)
STEPTOE & JOHNSON PLLC
P.O. BOX 1616
MORGANTOWN, W. VA. 26507 1616
Phone:        (304) 598-8000
Facsimile:    (304) 598-8116

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*4,506*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>December 14, 2015</u>          <u>/s/ Deva A. Solomon</u>
                                          *Counsel for Appellant*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 14th day of December, 2015, I caused this Reply

Brief of Appellant to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

| | |
|---|---|
| Paul J. Harris | Robert G. McCoid |
| HARRIS LAW OFFICES | MCCAMIC, SACCO, PIZZUTI & |
| 15th & Eoff Streets | MCCOID, PLLC |
| Wheeling, West Virginia  26003 | 56-58 14th Street |
| (304) 232-5300 | Post Office Box 151 |
| | Wheeling, West Virginia  26003 |
| | (304) 232-6750 |
| | |
| *Counsel for Appellee* | *Counsel for Appellee* |

I further certify that on this 14th day of December, 2015, I caused the

required copies of the Reply Brief of Appellant to be hand filed with the Clerk of

the Court.

/s/ Deva A. Solomon
*Counsel for Appellant*